COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Athey and Callins
Argued at Virginia Beach, Virginia


SHAWN ANTOINE KEELING

MEMORANDUM OPINION* BY
v.      Record No. 1362-21-1      JUDGE DOMINIQUE A. CALLINS
NOVEMBER 15, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Samantha Offutt Thames, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General; Leah A. Darron, Senior Assistant
Attorney General, on brief), for appellee.


Shawn Antoine Keeling pleaded guilty to possessing more than one ounce, but not more

than five pounds of marijuana with intent to sell, give, or distribute marijuana, a Class 5 felony in

violation of Code § 18.2-248.1(a)(2). At the sentencing hearing that followed, Keeling moved to

withdraw his guilty plea. The trial court denied Keeling's motion. Keeling argues on appeal that

the trial court erred in its denial of his motion to withdraw his guilty plea. We affirm the

judgment of the trial court.

BACKGROUND

The facts underlying Keeling's conviction are memorialized in a jointly submitted

stipulation of facts. In December 2020, several Chesapeake Police officers "assisted" Newport

News Police officers in executing a search warrant at a residence in Chesapeake occupied by

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Keeling and co-defendant, his wife.  Police found a total of 138.61 grams of marijuana "packaged in multiple bags" in Keeling's bedroom.  A digital scale was on a table in the room, alongside multiple empty sandwich bags "with the bottom corners removed."  Police also found two empty bags, each containing "suspected marijuana residue."  The bags were labeled "Insane Premium Cannabis" and "b[ore] small white stickers indicating 15 grams and 19.74% THC content."  Keeling asked one of the officers, "how much ya'll paying . . . [t]he snitches that got you [police] to the house[?]"  Analysis of Keeling's cell phone revealed messages "indicative of marijuana distribution activities."

The stipulation of facts included photographs from the search.  The photographs depict several plastic bags, each tied off, containing a "large amount of marijuana."  The plastic bags were found in an unlocked SentrySafe in a bedroom closet.  The stipulation also notes that an officer with the Chesapeake Vice and Narcotics Division "would have testified that the evidence in this case is inconsistent with the personal use of marijuana."

Keeling was indicted for selling, giving, distributing, or possessing more than one ounce, but not more than five pounds of marijuana with intent to sell, give, or distribute marijuana, a Class 5 felony under Code § 18.2-248.1(a)(2).  On the date of trial, he pleaded guilty to the charge.

Before accepting the plea, the trial court conducted a thorough colloquy with him to ensure it was freely and voluntarily entered.  Keeling confirmed that he had discussed with his attorney the charge, its elements, and any possible defenses.  He also confirmed that after the discussion with his attorney, he decided to plead guilty because he was "in fact guilty."  Keeling confirmed that he understood that by pleading guilty he waived certain constitutional rights, including the right to confront the witnesses against him.  Keeling and the trial judge engaged in the following colloquy regarding Keeling's waiver of his right to confrontation:

> THE COURT: . . . And because there will be no trial, the reason I ask you if you understand this is because, because there will be no trial, your attorney will not be able to cross-examine, or what they call "confront," the witnesses in this courtroom under oath.  She

won't be able to do that because there will be no trial, and that's a constitutional right that you have that you're giving up, right? It's not going to happen.

[KEELING]: I might want to talk to my lawyer on that one.

THE COURT: Okay.

. . . .

THE COURT: The right to confrontation. Your attorney could cross-examine the witnesses if we had a trial, but we're not having a trial, so I'm telling you that's not going to happen; do you understand that? There will be no trial so—

[KEELING]: Yes, sir.

[DEFENSE COUNSEL]: So that means the officers won't come to court and take the stand and answer any questions. That's what the Judge is referring.

[KEELING]: Okay. Thank you.

[DEFENSE COUNSEL]: Okay. You're welcome.

He also confirmed that he understood the trial court could sentence him to up to ten years' incarceration. Keeling acknowledged that although he had discussed the discretionary sentencing guidelines[1] with his attorney he understood that the trial court did not have to impose a sentence within that range. Keeling represented that he was "entirely satisfied" with his attorney and asked the trial court to accept his plea. Keeling also agreed that the joint stipulation accurately summarized the evidence that would be admitted at trial and confirmed he had signed it.[2]

---

[1] The discretionary sentencing guidelines recommended between three and six months in jail.

[2] In response to the trial court's question, "do you agree that if the case had come to trial, that the Commonwealth could have called in the witnesses live and in person to testify to what is written in this stipulation of facts," Keeling responded, "Yes, sir." Similarly, when the trial court asked Keeling's counsel whether she agreed "that the Commonwealth could have put on a case in accordance with the contents of the stipulation of facts," she responded, "Yes, Your Honor."

Several Commonwealth witnesses were present at the time of Keeling's plea, including Chesapeake officers who aided in the execution of the search warrant. Based on Keeling's plea and the joint stipulation, the trial court found that there was "overwhelming evidence of guilt" and convicted Keeling of possession of more than one ounce but not more than five pounds of marijuana with the intent to distribute. The trial court then continued the matter for sentencing.

Before the sentencing hearing, the Commonwealth filed two supplemental discovery responses under seal which were also served on Keeling's trial counsel. The responses reported that two Chesapeake Police officers who had been involved in Keeling's case were no longer employed by the Department. One had been terminated "after an Internal Affairs investigation," which "did not involve any cases on which he worked or in which he testified." The other officer was terminated because of "issues involving veracity," not pertaining to "any criminal investigations he conducted or was involved with."

At the sentencing hearing, Keeling moved to withdraw his guilty plea based on the Commonwealth's supplemental discovery responses. Beyond the information provided in the supplemental responses, he did not know the details of why the officers no longer worked for the Department; nor did he know "what part they played" in his case. Keeling proffered that he learned of the information in the discovery responses after entering his guilty plea and after learning that the related charges against his wife had been nol prossed. His trial counsel admitted, "I can't quite remember off the top of my head the officer involved in this case, what happened with that officer, and I'm not sure if it was another witness issue, but that's why that case was nol[]prossed." Keeling stated that he proceeded with the guilty plea not knowing that the Commonwealth would eventually nol pros his wife's case, noting, "These were not known factors when he did enter into that guilty plea." The Commonwealth countered that Keeling had not presented a sufficient basis to withdraw his plea and, when he pleaded guilty, the officers were "available for testimony."

The trial court agreed with the Commonwealth and denied Keeling's motion, finding that he had failed to establish "any of [the] elements" needed to withdraw a guilty plea. The trial court observed that the "people who were to testify were able to testify, and [Keeling] made a choice to plea." After more evidence and argument by counsel, the trial court sentenced Keeling to ten years' incarceration with eight years and six months suspended.

## ANALYSIS

"We review a trial court's decision to deny a defendant's motion to withdraw a guilty plea prior to sentencing under an abuse of discretion standard." *Pritchett v. Commonwealth*, 61 Va. App. 777, 785 (2013) (citing *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). "The decision whether to allow a defendant to withdraw his plea 'rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" *Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017) (quoting *Parris*, 189 Va. at 324). The trial court's ruling should be reversed "only upon 'clear evidence that [the decision] was not judicially sound.'" *Id.* (alteration in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)). This standard of review presupposes "that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013) (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

### I. The *Parris* Standard for Withdrawal of a Guilty Plea

The withdrawal of a guilty plea is governed by two separate standards depending on when the motion is made. "A motion to withdraw a guilty plea made *after sentencing* is governed by the 'manifest injustice' standard." *Brown v. Commonwealth*, 297 Va. 295, 300 (2019); s*ee also* Code § 19.2-296. In contrast, motions made before a defendant is sentenced should be granted if the plea was entered "by mistake or under a misconception of the nature of

the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury." *Pritchett*, 61 Va. App. at 786 (quoting *Parris*, 189 Va. at 325).

To satisfy the "more forgiving" pre-sentence standard, a defendant must meet two requirements. *Brown*, 297 Va. at 299. The two requirements, known as the *Parris* standard, originate in *Parris v. Commonwealth*, the progenitor of a line of jurisprudence on which this Court draws when reviewing a trial court's denial of a motion to withdraw a guilty plea. *See Williams v. Commonwealth*, 59 Va. App. 238, 245 (2011) (affirming *Parris* as "the 'seminal statement' of Virginia law governing 'the denial by a trial court of a motion to withdraw a guilty plea'" (quoting *Justus v. Commonwealth*, 274 Va. 143, 152 (2007))). First, a defendant has "the burden of establishing that his motion is made in good faith." *Spencer*, 68 Va. App. at 187 (citing *Ramsey v. Commonwealth*, 65 Va. App. 593, 600 (2015)). Yet establishing "good faith" cannot by itself support a successful motion. Second, a defendant must also "proffer evidence of a reasonable basis for contesting guilt." *Id.* The proffered defense must be "substantive, and not 'merely dilatory or formal.'" *Justus*, 274 Va. at 155-56; *see also Ramsey*, 65 Va. App. at 600-02. "The first requirement protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court. The second requirement defeats motions to withdraw which would result in an essentially futile trial." *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008).

Together with the two requirements of the *Parris* standard, a trial court should consider whether the Commonwealth would be prejudiced by granting a motion to withdraw a guilty plea. Our Supreme Court has "specifically recognize[d] prejudice to the Commonwealth as a relevant

factor that should be considered . . . ." *Small v. Commonwealth*, 292 Va. 292, 298 (2016); s*ee also Pritchett*, 61 Va. App. at 787; *Hubbard v. Commonwealth*, 60 Va. App. 200, 211 n.4 (2012).

II. Application of Requirements for Withdrawal of a Guilty Plea

We need not consider whether Keeling's motion was made in good faith because, assuming without deciding that it was, he failed to present any substantive evidence of a reasonable basis for contesting guilt. Familiar and well-established principles of judicial restraint relieve us from considering whether Keeling satisfied each prong of the *Parris* standard, as it is possible to render a decision here on narrower, more restricted grounds. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (instructing that this Court is governed by "[t]he doctrine of judicial restraint," which "dictates that we decide cases 'on the best and narrowest grounds available'" (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))); s*ee also Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (explaining that "[t]he 'best' answer to a legal question is the one . . . with which the greatest number of jurists would agree" and "[t]he 'narrowest' answer to a legal question is the one affecting the least number of cases").

Rather than offer evidence of a reasonable basis for contesting guilt, Keeling offers a theory: that the supplemental discovery responses disclose *potential* evidence which *may* be used to impeach the credibility of two of the Commonwealth's witnesses. At the sentencing hearing, Keeling argued that his motion to withdraw his guilty plea was "based on" his wife's charges being nol prossed following issues with the Commonwealth's witnesses. Keeling now contends that the Commonwealth's nol pros of the charges against his wife "not only clearly indicates that there are true issues with these officer's [sic] credibility, but also calls into serious question whether the Commonwealth could, in fact, still prove its case." He also contends that by not permitting him to withdraw his guilty plea and challenge the officers' credibility through

investigative means and cross-examination, the trial court errantly denied Keeling the opportunity to discover substantive evidence which might form a basis for contesting guilt. But on a motion to withdraw a guilty plea, the defendant bears the burden of establishing a reasonable basis for contesting guilt. "The role of the trial court is [only] to determine whether the defendant has made a *prima facie* showing of a reasonable defense." *Hernandez v. Commonwealth*, 67 Va. App. 67, 79 (2016). Keeling does not argue that he made such prima facie showing. Nor does he seek to reconcile whether the specific evidence adduced to support his motion to withdraw the guilty plea could, in fact, be made a reasonable basis for contesting guilt. Rather, his position on appeal rests on the premise that the ruling of the trial court denied him the opportunity to develop such evidence.

"A reasonable defense sufficient to withdraw a guilty plea is 'one based upon a proposition of law . . . or one supported by credible [evidence].'" *Spencer*, 68 Va. App. at 188 (quoting *Williams*, 59 Va. App. at 249). The defense must be "*sustained by proofs*." *Williams*, 59 Va. App. at 249 (quoting *Justus*, 274 Va. at 153). Accordingly, we have held that "a bare challenge to the credibility of a victim or witness" is not a reasonable defense that would "'permit the withdrawal of a plea of guilty.'" *Id.* Even when "newly discovered impeachment evidence is potentially exculpatory," it is insufficient to satisfy the *Parris* standard. *Thomason v. Commonwealth*, 69 Va. App. 89, 96 (2018). This is because whether evidence is exculpatory or potentially exculpatory "is not the proper standard for setting aside a guilty plea."[3] *Id.*

It follows that the evidence marshaled by Keeling cannot serve as a reasonable basis for contesting his guilt. Raising a credibility challenge does not equate to proffering a defense sustained by proofs and thus is insufficient to justify withdrawing a guilty plea. *Id.* At his plea

---

[3] There is no allegation that the Commonwealth breached its obligation to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).

hearing, Keeling pleaded guilty and, in a colloquy with the trial court, confirmed that he did so because he was in fact guilty. He also affirmed that he had not been made any offer or promise in exchange for pleading guilty. Indeed, Keeling's plea did not arise from a plea agreement with the Commonwealth, nor did he seek to preserve a claim of innocence despite his plea.[4] Although the Commonwealth nol prossed his wife's charges after the officers were terminated, Keeling admitted that he did not know "what part [the officers] played" in his case, the details of why the officers no longer worked for the Chesapeake Police Department, or even which officer participated in his case. Keeling instead relied on speculative assertion to mount a credibility challenge. Such speculation does not satisfy the *Parris* standard. *See Booker v. Commonwealth*, 61 Va. App. 323, 334-35 (2012) (holding that a defendant had not established a reasonable basis for contesting guilt when he relied on assertions that were "superficial," "lacked substance," and raised a "merely formal" defense). Indeed, on appeal Keeling admits to requiring further investigation to understand how the issues with the Commonwealth's witnesses will redound to his case.

"If the trial court finds as a matter of law, that the defendant has no reasonable defense, it may then deny the motion." *Hernandez*, 67 Va. App. at 79. Here, the trial court determined that the requisite "elements" needed to grant the motion to withdraw Keeling's guilty plea could not be found. Consequently, Keeling has failed to furnish "'clear evidence'" that the trial court's conclusion is "'not judicially sound.'" *Spencer*, 68 Va. App. at 186 (quoting *Jefferson*, 27

---

[4] Had Keeling entered an *Alford* plea, thereby maintaining his innocence while acknowledging the sufficiency of the evidence to convict him, this appeal may have presented differently. *See North Carolina v. Alford*, 400 U.S. 25 (1970). Yet Keeling would still confront the same requirement to establish good faith and to provide a reasonable basis for contesting guilt. That is, the same *Parris* standard applies. *See Cobbins*, 53 Va. App. at 35-36 (applying *Parris* to hold that a defendant entered *Alford* pleas for the purpose of subterfuge). But Keeling's plea of guilty because he was "in fact guilty" readily undercuts any argument that the potential impeachment of an officer is a reasonable basis for contesting his guilt.

Va. App. at 488).  Accordingly, the trial court did not err in finding that Keeling failed to meet his burden to withdraw his guilty plea.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*