COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Chaney and Senior Judge Annunziata


MARK LSHAUN PERRY MITCHELL, SOMETIMES KNOWN AS
 MARK LSHAUN PERRY-MITCHELL
                                            MEMORANDUM OPINION*
v.       Record No. 1471-22-1                    PER CURIAM
                                             OCTOBER 17, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Holly B. Smith, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Victoria Johnson, Assistant
Attorney General, on brief), for appellee.


On June 9, 2021, Mark Lshaun Perry-Mitchell pleaded guilty to robbery in the Circuit Court

of the City of Williamsburg and County of James City under the terms of a written plea agreement.

Five months later, Perry-Mitchell filed a motion to withdraw his guilty plea. The trial court denied

the motion finding that the plea was freely, intelligently, and voluntarily made. On appeal to this

Court, Perry-Mitchell challenges the trial court's denial of his motion to withdraw his plea. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the dispositive issue or issues have been authoritatively decided, and the

appellant has not argued that the case law should be overturned, extended, modified, or reversed."

Code § 17.1-403(ii)(b); Rule 5A:27(b).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, [as] the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On June 9, 2021, Perry-Mitchell and his counsel entered into a written plea agreement with the Commonwealth.  Under the agreement, Perry-Mitchell—who stood charged with robbery, conspiracy to commit robbery, abduction for pecuniary benefit, and two counts of use of a firearm in the commission of a felony—would plead guilty to robbery and the Commonwealth would move to nolle prosequi the remaining charges.[1]  The agreement was silent concerning Perry-Mitchell's sentence but expressly stated that the terms in the plea agreement itself were "the total agreement between the parties and there have been no other inducements, promises, threats or coercion of any kind imposed upon the defendant or suggested to the defendant by the Attorney for the Commonwealth or any agent of the Commonwealth."  Perry-Mitchell, his counsel, and the attorney for the Commonwealth each signed the agreement, which they presented to the trial court along with a completed guilty plea questionnaire.  The written questionnaire stated, among other things, that Perry-Mitchell understood that the offense carried the potential of a life sentence.  Perry-Mitchell signed the guilty plea questionnaire.

Before accepting his guilty plea, the trial court conducted a plea colloquy with Perry-Mitchell to ensure that he understood his guilty plea, his plea agreement, and the

---

[1] The total range of punishment that Perry-Mitchell faced for these charges was a minimum of 29 years of incarceration to a maximum of life in prison plus 18 years.  *See* Code §§ 18.2-10, 18.2-22, 18.2-48, 18.2-53.1, 18.2-58.

consequences of his plea.[2] Perry-Mitchell confirmed under oath that he fully understood the charge against him and that he had discussed with his attorney what the Commonwealth would have to prove at trial and any defenses he might be able to present. He also confirmed that, after discussing the matter with his attorney, Perry-Mitchell had decided for himself to plead guilty because he was, in fact, guilty of the offense. He understood the constitutional rights he was waiving by pleading guilty, including his right to a jury trial, his right to remain silent, and his right to confront and cross-examine the Commonwealth's witnesses. Perry-Mitchell assured the trial court that no one, including his attorney, had made any promises or threats to induce his guilty plea other than what was provided in the plea agreement. He expressed his satisfaction with his attorney and asked the trial court to accept the plea agreement. He confirmed his understanding with the trial court that the maximum sentence was life in prison. Perry-Mitchell declined the opportunity to ask the trial court questions.

The Commonwealth proffered that its evidence would show that around 1:00 a.m. on June 14, 2019, Jose Cintron was dropped off at his apartment building after work. While Cintron waited outside for two female friends to arrive, two males approached in a vehicle and spoke with him. Cintron told the men that he was waiting for two female friends. The driver told Cintron that the women were on the other side of the building and then drove away. A short time later, the men returned with two more men in the car while Cintron was still standing on the curb. The front seat passenger and a rear seat passenger exited the car with handguns—one of which Cintron described as a black Glock.

The armed assailants approached Cintron; one pressed a gun against Cintron's ribcage while the other pointed a gun at Cintron's head. The assailants took property from Cintron, including a 14-carat gold chain with a distinctive charm adorned with a ruby and diamonds. The

---

[2] Judge Michael E. McGinty conducted the colloquy and accepted the plea agreement.

assailants also took Cintron's iPhones and a backpack. The Commonwealth proffered that Cintron would identify Perry-Mitchell as one of the armed assailants. Police later recovered the gold chain from the apartment of one of the co-defendants in Hampton. Perry-Mitchell's counsel agreed that the Commonwealth's summary was the evidence it would have presented at trial.

The trial court accepted Perry-Mitchell's guilty plea, finding that he entered it freely, intelligently, and voluntarily and with an understanding of the nature of the charge and the consequences of his plea. It also accepted the written plea agreement. The trial court convicted Perry-Mitchell of robbery and continued the matter for sentencing.

Perry-Mitchell's counsel, George Brooks, subsequently moved to withdraw from the representation. At a hearing on the motion, Brooks explained to the trial court that he and Perry-Mitchell did not "see eye to eye" and he did not believe the situation would improve because Perry-Mitchell wanted to withdraw his guilty plea. Perry-Mitchell advised the trial court that he was "cool with" his counsel withdrawing. The trial court granted the motion and appointed new counsel.

On November 12, 2021, Perry-Mitchell moved to withdraw his guilty plea. He argued that he had entered into the plea agreement under a "good faith" misunderstanding concerning the sentence he faced. He claimed that he did not understand when he entered his guilty plea that it was an "open" plea; he thought that it contained a cap on the potential sentence of no more than four years of incarceration. Perry-Mitchell also argued that he had a reasonable defense to the charge because he was only a passenger in the car and did not know that his cohorts were planning a robbery. He also posited that Cintron may have misidentified him.

The Commonwealth filed a written opposition which appended as exhibits to its motion a transcript of the guilty plea colloquy, the written guilty plea questionnaire, and a transcript of the preliminary hearing at which Cintron had identified Perry-Mitchell as one of the gunmen. The

transcript of the preliminary hearing also included testimony from the investigating officer, who stated that when Hampton police encountered Perry-Mitchell a short time after the robbery, he had Cintron's cell phone in his pocket.

At a hearing on his motion to withdraw his plea, Perry-Mitchell proffered an affidavit in which he averred that his understanding when he entered the plea agreement was that he would receive a sentence of no more than four years of incarceration, that he was a passenger and had remained in the car during the robbery, and that at trial he could have cross-examined Cintron.

In addition to its exhibits, the Commonwealth presented testimony from Perry-Mitchell's original trial counsel, George Brooks. Brooks identified the written plea agreement and confirmed that both Brooks and Perry-Mitchell signed the plea agreement. Brooks also confirmed that he reviewed the plea agreement with Perry-Mitchell. Brooks confirmed that he never represented to Perry-Mitchell that there was an agreement to cap his sentence at no more than four years. In opposing Perry-Mitchell's motion, the Commonwealth reiterated its argument that Perry-Mitchell's motion was not made in good faith, that he had no reasonable defense, and that the Commonwealth would be prejudiced because it was no longer in contact with Cintron, whose phone had been disconnected.

The trial court found that there had been both a "written colloquy," in the form of the guilty plea questionnaire, and a plea colloquy. The court had reviewed the plea agreement with Perry-Mitchell, and the trial court confirmed it contained the bargain Perry-Mitchell had struck with the Commonwealth. The trial court found that Perry-Mitchell had been asked if any other promises had been made to him, and he confirmed there had been no other promises. The court also noted that Perry-Mitchell had been advised that the court was ordering a pre-sentence report and continuing the matter for sentencing. Under those circumstances, the trial court found that there was no misunderstanding concerning the terms of the plea agreement and no good faith

basis for withdrawing the guilty plea. The trial court further found that there was not a reasonable basis for contesting guilt and that the Commonwealth would be prejudiced if it permitted Perry-Mitchell to withdraw his guilty plea. The trial court denied Perry-Mitchell's motion and subsequently sentenced him to 50 years of imprisonment with 38 years suspended.

On appeal, Perry-Mitchell argues that the trial court erred in not permitting him to withdraw his guilty plea because his motion was timely, he had a "reasonable basis for contesting guilt," he "mistakenly thought that there was an understanding that his sentence would not exceed four years if he [pleaded] guilty to the robbery charge," and the Commonwealth would not be prejudiced because it "still had its witnesses and evidence and could readily go to trial if necessary."

ANALYSIS

We review a trial court's decision to deny a defendant's motion to withdraw a guilty plea made before sentencing under an abuse of discretion standard. *Pritchett v. Commonwealth*, 61 Va. App. 777, 785 (2013). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *DeLuca v. Commonwealth*, 73 Va. App. 567, 575 (2021) (quoting *Ramsey v. Commonwealth*, 65 Va. App. 593, 599 (2015)), *aff'd*, ___ Va. ___ (Apr. 13, 2023). "Accordingly, we may reverse a trial court's denial of the motion 'only upon "clear evidence that [the decision] was not judicially sound[.]"'" *Id.* (alterations in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)).

Virginia law sets two separate standards governing motions to withdraw a guilty plea, depending on the timing of the motion. *Brown v. Commonwealth*, 297 Va. 295, 299 (2019). "Under the more forgiving pre-sentencing standard, a motion to withdraw should be granted if the guilty plea was 'made involuntarily' or 'entered inadvisedly, if any reasonable ground is offered for going to the jury.'" *Id.* (quoting *Parris v. Commonwealth*, 189 Va. 321, 325 (1949)).

These requirements serve important values. As stated previously by this Court, the good faith requirement "protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court," while the reasonable defense requirement "defeats motions to withdraw which would result in an essentially futile trial." *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008). In addition, "the court should consider whether withdrawal of a guilty plea will result in prejudice to the Commonwealth." *Ramsey*, 65 Va. App. at 600. "Such prejudice may exist where the record reflects that the Commonwealth has partially or fully fulfilled its obligations in a plea agreement by dismissing or amending charges." *Id.* (quoting *Hubbard v. Commonwealth*, 60 Va. App. 200, 211 n.4 (2012)).

Here, the trial court found that Perry-Mitchell failed to make the requisite showings. Addressing the good faith requirement, the trial court found that Perry-Mitchell's motion was not made in good faith because there was "ample evidence" in the record that his guilty plea was free and voluntary. Furthermore, the trial court found that there was no misunderstanding concerning the consequences of pleading guilty to this charge. The record fully supports the trial court's finding. The guilty plea questionnaire expressly stated that Perry-Mitchell could be sentenced up to life in prison. Perry-Mitchell signed this questionnaire. Although the written plea agreement was silent concerning the sentence Perry-Mitchell would receive, Perry-Mitchell confirmed during his oral plea colloquy that he understood that "the maximum punishment is life in the penitentiary." Perry-Mitchell also assured the trial court that no one—including his trial counsel—had promised him anything other than what was presented to the trial court in the written plea agreement. Perry-Mitchell's original counsel, Brooks, confirmed this point at the hearing on Perry-Mitchell's motion to withdraw his guilty plea. In sum, Perry-Mitchell's guilty plea was not "'made involuntarily' or 'entered inadvisedly.'" *Brown*, 297 Va. at 299 (quoting *Parris*, 189 Va. at 325).

The trial court also found that Perry-Mitchell had not proffered a reasonable basis for contesting guilt. As stated previously in binding precedent, a trial court "should not, . . . permit a plea to be withdrawn 'in aid of an attempt to rely upon a merely dilatory or formal defense.'" *Pritchett*, 61 Va. App. at 786 (quoting *Parris*, 189 Va. at 325). To withdraw a guilty plea, an "asserted defense must be 'substantive' and a 'reasonable defense.'" *Booker v. Commonwealth*, 61 Va. App. 323, 333 (2012) (quoting *Bottoms v. Commonwealth*, 281 Va. 23, 33, 34 (2011)).

"The reasonable defense requirement, as interpreted by this Court, 'is one based upon a proposition of law, . . . or one supported by credible testimony, supported by affidavit.'" *Thomason v. Commonwealth*, 69 Va. App. 89, 96 (2018) (quoting *Williams v. Commonwealth*, 59 Va. App. 238, 249 (2011)); *Ramsey*, 65 Va. App. at 602. A "reasonable defense" cannot be based solely upon a challenge to the credibility of a victim's testimony. *Williams*, 59 Va. App. at 249. Perry-Mitchell's proffered defense consisted of his assertion that he remained in the car during the robbery and his suggestion that Cintron may have been mistaken in his identification. However, that proffer amounted only to an attack on Cintron's identification, and was therefore insufficient under binding precedent. *Id.*; *Thomason*, 69 Va. App. at 96 (holding that merely presenting a "conflict of testimony" is insufficient to establish a "reasonable defense").

Finally, the trial court found that permitting Perry-Mitchell to withdraw his guilty plea would prejudice the Commonwealth. *Thomason*, 69 Va. App. at 97. The record establishes that the Commonwealth fulfilled its commitment to nolle prosequi the four additional felony charges. Furthermore, the trial court credited the Commonwealth's proffer that it "no longer ha[d]a good number for this victim." Perry-Mitchell does not cite anything in the record to support his statement that the Commonwealth "still had its witnesses and evidence and could readily go to trial if necessary." The Commonwealth fully performed its obligations under the plea agreement

and no longer had contact with Cintron.  Thus, the record supports the trial court's finding of prejudice.  *Ramsey*, 65 Va. App. at 600.

Considering all the evidence presented in the record before us, we cannot say that the trial court abused its discretion by denying Perry-Mitchell's motion to withdraw his guilty plea.

CONCLUSION

Perry-Mitchell failed to meet his burden to demonstrate to the trial court that he had a good faith basis for seeking to withdraw his guilty plea, that he had a reasonable basis for contesting his guilt based on a proposition of law or credible witness testimony, and that the Commonwealth would suffer no prejudice.  The record reflects that the trial court carefully considered the entire record and exercised sound judicial discretion.  Consequently, we do not disturb the judgment of the trial court.

*Affirmed.*