COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Callins
Argued at Arlington, Virginia

ROBERT JOSEPH HARDY, II

v.      Record No. 0368-24-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
MAY 6, 2025

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Angela L. Horan, Judge

Elena Kagan, Assistant Public Defender (Kelsey Bulger, Deputy
Appellate Counsel; Virginia Indigent Defense Commission, on
briefs), for appellant.

C. David Sands, III, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Robert Joseph Hardy, II, appeals the order of the Circuit Court of Prince William County

denying his pre-sentencing motion to withdraw his guilty pleas.  He argues that the circuit court

applied the wrong legal standard and improperly denied his motion to withdraw his guilty pleas

because he had a reasonable defense to the charge of child abuse or neglect.

## I.  BACKGROUND[1]

"On appeal, we state the facts 'in the light most favorable to the Commonwealth'" as the

prevailing party in the circuit court, "'giving it the benefit of any reasonable inferences.'"  *Hill v.*

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The record in this case was partially sealed.  "To the extent that this opinion mentions facts found in the sealed record, only those specific facts have been unsealed because they are relevant to the decision in this case.  The remainder of the previously sealed record remains sealed."  *Eckard v. Commonwealth*, __ Va. __, __ n.1 (Aug. 1, 2024).

*Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)).

### A. The Commonwealth's Evidentiary Proffer

On October 28, 2021, at Hardy's plea hearing, the attorney for the Commonwealth proffered (without objection or amendment from Hardy's trial counsel) the evidence the Commonwealth would have presented at trial. The attorney for the Commonwealth proffered that on September 21, 2020, "Sergeant Heather Harris with the Prince William County Police Department observed the driver of a two door Ford pickup truck strike the curb near the intersection of Cardinal Drive and Benita Fitzgerald Drive located in Prince William County." Sergeant Harris "continued to follow the truck and observed the driver commit additional traffic infractions." "Believing the driver may be intoxicated," Sergeant Harris then "activated her emergency lights and stopped the vehicle." She "approached the vehicle and saw" Hardy "in the driver's seat." She also "saw a young child in the front passenger seat secured by a front facing car seat"—and that "child was later determined to be" Hardy's "three year old daughter."

The attorney for the Commonwealth then proffered that Sergeant Harris "called for assistance in conducting the traffic stop" and that "Officer Matthew Surdam responded" to assist Sergeant Harris. Officer Surdam soon thereafter "made contact with the driver and immediately observed that he had glassy eyes, slurred speech, and was slow to respond to questions." Hardy told Officer Surdam that "he had not consumed any alcohol or drugs prior to driving." Officer Surdam then asked Hardy "if he would step out of the vehicle to perform standardized field sobriety tests," and Hardy "agreed to do so." Officer Surdam noted, however, that Hardy "was slightly unsteady on his feet upon exiting the vehicle," and he "exhibited multiple signs of impairment" while "performing the standardized field sobriety test." Hardy then "consented to take" a preliminary breath test, and his blood alcohol concentration "registered as" zeros.

Officer Surdam subsequently placed Hardy "under arrest for suspicion" of driving while under the influence of drugs, and "he was Mirandized."[2]

The attorney for the Commonwealth went on to proffer that, while Officer Surdam "conducted a search of Defendant incident to arrest, Defendant admitted to taking Suboxone a few hours prior to driving," and he also "stated that he was prescribed it and had taken a half drip." "When asked if there was anything illegal in the car," Hardy "admitted that multiple used syringes would be found in the driver's side door of his vehicle." The police then found "the syringes, a plastic spoon covered in a white powdery substance, a pill bottle containing plastic wrappings, paper and a cut straw"—all of which were "located in the driver's side door of the Defendant's vehicle." Hardy's mother, Donna Hardy, later arrived "to take custody of the child, as well as Defendant's truck." Hardy "was subsequently transported to the Sentara Hospital where a blood draw was conducted with Defendant's consent."

Finally, the attorney for the Commonwealth proffered that, once Officer Surdam returned to the police station, "he packaged and sent the syringes, pill bottle, cut straw and spoon with white powdery substance" to the Virginia Department of Forensic Science "for clinical analysis." The corresponding certificate of analysis—which the Commonwealth introduced into evidence at the plea hearing (without objection from Hardy's trial counsel) as Exhibit 1A—showed "positive test results for the controlled substances of heroin, etizolam and fentanyl." In addition, Hardy's "blood was also packaged and sent" to the Virginia Department of Forensic Science "for clinical analysis." The corresponding certificate of analysis—which the Commonwealth introduced into

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

evidence at the plea hearing (also without objection from Hardy's trial counsel) as Exhibit 1B—

showed that Hardy's "blood at the time of driving contained etizolam, fentanyl and morphine."[3]

At the conclusion of the attorney for the Commonwealth's proffer, Hardy's trial counsel

acknowledged that the evidence "is sufficient for a *prima facie* case beyond a reasonable doubt."

### B. Hardy's Charges and Plea Agreements

Hardy was charged with one felony count of possession of a Schedule I/II controlled

substance, in violation of Code § 18.2-250; one felony count of child abuse or neglect, in

violation of Code § 18.2-371.1(B); and one misdemeanor count of driving while under the

influence (first offense), in violation of Code § 18.2-266. Hardy and the Commonwealth entered

into two written plea agreements in which Hardy agreed to plead guilty to the felony charges of

possession of a Schedule I/II controlled substance and child abuse or neglect.[4] The parties

agreed to recommend a sentence within the applicable discretionary sentencing guidelines.

---

[3] At a later hearing on August 24, 2023, the attorney for the Commonwealth supplemented the Commonwealth's evidentiary proffer by telling the circuit court that Hardy "nearly r[an] Sergeant Harris off the road" and was "completely oblivious" to doing so before he "then goes from the right to the left lane, smashes into a curb, which is what causes her to pull him over." The attorney for the Commonwealth proffered that when Officer Surdam administered the field sobriety tests, Hardy "did not even want to try or attempt the one-legged stand, he says, because he feels right now that he would just tip over, which is an indication of his high level of intoxication." In addition, the attorney for the Commonwealth proffered that Hardy had "four times the bodily limit" of morphine in his bloodstream (which the attorney for the Commonwealth emphasized "would kill most people") and that Hardy "admitted himself that he was under the influence of what he claimed to be Suboxone, even though there was no Suboxone and there was testing for Suboxone in his blood." Finally, the attorney for the Commonwealth proffered that when Officer Surdam asked Hardy, "Are you aware of the danger you put your daughter in?", Hardy affirmatively answered, "Yes."

[4] The attorney for the Commonwealth also proffered that he initially offered to *nolle prosequi* Hardy's child abuse or neglect charge in exchange for Hardy pleading guilty to the other two charges because Hardy "had minimal criminal history, and because the Commonwealth was under the impression that a conviction under [Code §] 18.2-371.1 would result in harsher consequences with regard to [his] custody and visitation rights of his daughter." However, Hardy "elected to reject the offer" because a conviction for driving while under the influence "would have a harsh impact on [his] job, which required [him] to drive a motor vehicle." Furthermore, Hardy "was not as concerned with the consequences" that the child abuse

## C. The Circuit Court Proceedings

At Hardy's plea hearing on October 28, 2021, the circuit court judge conducted the required plea colloquy. Hardy answered to the circuit court judge's satisfaction each question asked, including:

- "You understand that you are charged with possession of a schedule I or II narcotic" and "that the range of punishment for that in Virginia is between one and ten years?"

- "You understand that you're also charged with . . . child abuse, reckless endangerment essentially," and "that the range of punishment in Virginia for that is between one and five years?"

- "Did you have a chance to go over those charges with your lawyer?"

- "Did you talk about what the pieces of those charges are or the elements of those charges?"

- "[Y]ou have a right to plead not guilty here. And if you did that, the Commonwealth would have to prove every element of both of those charges beyond a reasonable doubt before you could be found guilty. So, do you feel like you understand what the Commonwealth would have to prove and the level they'd have to prove it to?"

- "Have you had enough time to talk with [your attorney] about any potential defenses that you might have to these charges?"

- "Did you talk about the various plea choices that you have? On the one hand, you can choose to plead not guilty, which is a full invocation of your constitutional rights; on the other hand, the choices are guilty, no contest, or a guilty plea under the *Alford* decision. Did you talk about those options with [your attorney]?"

- "As a result of your discussions with your lawyer, who made the decision that you would enter guilty pleas to these two charges?"

---

or neglect charge "would have on his custody and visitation rights because his mother either had or would soon have primary custody of his daughter." Although Hardy's written plea agreements did not memorialize the Commonwealth's commitment to *nolle prosequi* the driving while under the influence charge, Hardy's trial counsel and the attorney for the Commonwealth both acknowledged that the charge was *nolle prosequied* "as part of the plea agreement that he initially entered into."

- "Did anybody threaten you to get you to plead guilty?"

- "Did anybody make any promises to you, beyond what's written on this form?"

- "Are you pleading guilty because you are, in fact, guilty?"

- "When you plead guilty, you give up certain constitutional rights. One of the rights that you're giving up is a right to a trial and a right to a trial by jury; you understand you're giving that up?"

- "You also have a right, if you plead not guilty to this, to have any witness who would testify against you brought here and made to do that in your presence, and have your lawyer subject them to cross examination, and you're giving that up?"

- "You have a right to be free from anybody forcing you to give evidence against yourself, and you're giving that up?"

- "You understand that even though you're pleading guilty and you're taking responsibility for these things, I could choose to sentence you up to the maximum allowed, which is ten years on one and five years on the other?"

- "You understand I could stack those [sentences] on top of each other for a total of fifteen years?"

- "Have you and your attorney discussed what the sentencing guidelines are" and "[h]ave you had enough time to talk with him about what the sentencing guidelines might show in your case?"

- "[T]hese plea forms, did you get a chance to read them over" and "[d]id you get a chance to ask your lawyer any questions you wanted to about them?"

- "I saw some handwritten changes were made on [the plea forms] right here in the courtroom; you get a chance to look at that" and "talk to your lawyer about that as much as you wanted to?"

- "Did you sign these" plea forms and "[a]re these your signatures on these?"

- "Are all the statements on these [plea forms] about your understanding of the charge and your understanding of the rights that you're giving up, a lot of which we just talked about, are those statements on here true and correct to the best of your knowledge and belief?"

- "Are you satisfied with the services of your attorney?"

- "Do you understand that when you plead guilty, you give up almost every right you have to appeal the conviction or any sentence that I impose as long as I stay within the law?"

- "Have you understood all of my questions?"

- "Have you answered them all truthfully?"

- "Do you have any questions for me?"

- "Do you still want to plead guilty after this discussion we've had?"

The circuit court judge accepted Hardy's guilty pleas, stating, "I'm going to find that you are entering your pleas of guilty to these two charges freely, knowingly and voluntarily; that you understand the nature of the charges against you and the consequences of pleading guilty, so I will accept your pleas." After hearing the Commonwealth's evidentiary proffer, the circuit court judge subsequently found Hardy guilty of the felony offenses of possession of a Schedule I/II controlled substance and child abuse or neglect, stating, "Having accepted your pleas of guilty and heard the proffer of evidence that I just heard, I'm going to find you guilty on these two charges." The circuit court then set sentencing for February 18, 2022, placed Hardy on supervised probation, and released him on bond pending sentencing.[5]

The parties convened for a sentencing hearing on May 5, 2022. After hearing argument from the parties, the circuit court judge decided to delay sentencing to November 3, 2022. In announcing the decision, the circuit court judge explained to Hardy, "I'm going to give you one more chance. Six months from now, we will come together and I will decide what to do about this. In the meantime, you are referred to probation. You are to begin probation, as if that was

---

[5] By order entered on February 18, 2022, the circuit court continued Hardy's sentencing hearing to April 7, 2022, because Hardy could not be present due to a positive COVID-19 test. By order entered on April 6, 2022, the circuit court again continued Hardy's sentencing hearing to May 5, 2022, with the agreement of the parties.

indeed your sentence today." The circuit court judge warned Hardy, "I was inclined to jail you" because "[w]e've got a bad course here of you ducking probation." The judge then opined, "[W]e will see if I am dealing with somebody who wants help six months from now."

On September 15, 2022, Hardy's probation officer informed the circuit court that Hardy's "adjustment to supervision has been unsatisfactory" because he "continues to test positive for dangerous illegal substances," he "refused to provide a urine screen," he failed to "engage in substance abuse treatment services," and he "failed to report to the probation office as instructed." Hardy's probation officer later informed the circuit court that Hardy's "whereabouts are unknown" as of October 19, 2022. The circuit court subsequently revoked Hardy's bond and set his sentencing hearing for January 5, 2023.

On December 15, 2022, Hardy's trial counsel moved to withdraw as counsel of record for Hardy, and the circuit court granted the motion by order entered on December 20, 2022. The circuit court then appointed the Office of the Public Defender to represent Hardy, and the court released him again on bond. After multiple continuances, Hardy's sentencing hearing was reset for March 17, 2023. Hardy, however, continued to test positive for illegal drugs, and he was arrested in a neighboring county in February 2023 for possession of a Schedule I/II controlled substance. Following his release from jail, Hardy also failed to contact his pretrial supervision officer.

On March 10, 2023, Hardy, through his new trial counsel, moved to withdraw his guilty pleas, asserting that "it was a mistake to plead guilty to these charges." He claimed that he "was not fully advised by his prior counsel as to viable substantive defenses he would have had to the charges, particularly the charge of child abuse." He maintained that his "request to withdraw his guilty pleas is made in good faith" and that he "has a reasonable basis for asserting substantive defenses that are neither merely formal nor dilatory and that the ends of justice can only be

- 8 -

served by allowing him to withdraw his guilty pleas." Specifically, Hardy relied on *Coomer v. Commonwealth*, 67 Va. App. 537, 550-51 (2017), in which this Court held that driving while under the influence, standing alone, is not sufficient to prove criminal negligence for the purpose of felony child abuse or neglect.[6]

After multiple continuances, the parties convened on September 8, 2023, for a hearing on Hardy's motion to withdraw his guilty pleas. Hardy, however, was not present because he was purportedly in jail in a neighboring county on another charge. The circuit court continued the hearing to September 14, 2023, but the circuit court judge decided to use the hearing on September 8, 2023, "to let you all know where I think the law is on this."

At the outset, the circuit court judge noted that there is no "factual dispute between [the] parties" that Hardy's guilty pleas were "tendered in good faith." The judge then explained that Hardy is required to present a "substantial [d]efense"—which the judge described as "one supported by a provision of law or affidavit"—before the court would allow him to withdraw his guilty pleas, given that "the tendering of a guilty plea [is] such a solemn thing." The judge interpreted Hardy's "substantial [d]efense" as challenging the credibility of the Commonwealth's evidence because the Commonwealth's evidentiary proffer showed more than mere intoxication to support the child abuse or neglect charge. The circuit court judge further explained that a "substantial [d]efense" is "something akin to an affirmative [d]efense" and "[s]omething that is based on [a] proposition in law"—which the judge stated must be supported by "affidavits or testimony" that would undermine the witnesses' credibility. In addition, the circuit court judge noted that "prejudice to the Commonwealth" is a factor for the court to consider.

---

[6] Hardy also argued that the police did not have probable cause to arrest him. However, he does not raise that argument on appeal as a reason justifying withdrawal of his guilty pleas. Hardy did not present any other defense to the charge of possession of a controlled substance.

At the continued hearing on September 14, 2023, Hardy's new trial counsel disagreed with the circuit court judge that "an affidavit is necessary or required," and he asserted that "a proffer or affidavit or evidence" is sufficient. In response, the circuit court judge asked Hardy's trial counsel to "give me a proffer." Counsel for Hardy then proffered that "the evidence is that the Commonwealth says he almost hit an officer, and almost, or maybe he did, bump a curb." He maintained, however, that there was no "evidence that the child was endangered" because "when the officer approaches the vehicle, the child is fine, and the child says, 'We were on our way to get [F]rench fries.' The only harm that actually came to the child was that the child didn't get her [F]rench fries." Hardy's trial counsel then asserted that "based on the evidence that was provided to me in police reports and video," there was "no evidence, apart from the intoxication and the driving behavior," to sustain a conviction for child abuse or neglect.[7]

In response, the attorney for the Commonwealth argued that granting Hardy's motion to withdraw his guilty pleas "will prejudice the Commonwealth" because the statute of limitations had expired on the driving-while-under-the-influence offense.[8] The attorney for the Commonwealth emphasized that the Commonwealth "held up our end of the bargain" by agreeing to *nolle prosequi* Hardy's driving-while-under-the-influence charge in reliance on his guilty pleas to the other two charges and that Hardy "is attempting to withdraw his end of the bargain."

---

[7] When Hardy's trial counsel stated, "I don't think he fully understood" his defenses, the circuit court judge again asked for an "affidavit to that effect." Counsel for Hardy responded that Hardy would affirm that "he didn't understand that he had these defenses at the time, that there was potentially a [m]otion to [s]uppress, and that there is this case law about the sufficiency of the evidence in a child abuse case." The circuit court expressly accepted this proffer from Hardy's trial counsel.

[8] The statute of limitations for the misdemeanor offense of driving while under the influence is one year. Code §§ 18.2-266, 19.2-8.

After hearing argument from both sides, the circuit court denied Hardy's motion to withdraw his guilty pleas, finding that Hardy had not "presented enough to justify the withdrawal of the guilty plea." Hardy now appeals to this Court.

## II. ANALYSIS

### A. Standard of Review

It is well settled that "[t]he decision whether to grant or deny the withdrawal of a plea 'is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" *Commonwealth v. Holland*, __ Va. __, __ (Jan. 16, 2025) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). "[W]hen a decision is discretionary . . . 'the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by a mistake of law.'" *Ramsey v. Commonwealth*, 65 Va. App. 593, 599 (2015) (alteration and ellipses in original) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Id.* (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

The Supreme Court has repeatedly stated that, in applying the deferential abuse of discretion standard, we "presume—even in the absence of specific factual findings—that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence." *Holland*, __ Va. at __ (quoting *Hill*, 297 Va. at 808). "Where, as here, the trial court does not make express findings of fact, a reviewing court cannot make its own." *Id.* at __. "Instead, it is

an appellate court's function to presume that the trial court made the requisite findings of fact to support its decision"—and "those findings of fact 'will not be disturbed unless plainly wrong or without evidence to support [them].'" *Id.* at __ (alteration in original) (quoting *Jones v. Commonwealth*, 29 Va. App. 503, 512 (1999)).

## B. Motion to Withdraw Guilty Pleas

On appeal, Hardy argues that the circuit court "erred in denying Mr. Hardy's motion to withdraw his guilty plea" because the circuit court "applied the wrong legal standard" and because "Mr. Hardy had a substantive defense to the charge of abuse and neglect of a child." He contends that the circuit court "applied the wrong standard" by requiring him "to show more than a merely reasonable defense," and by requiring him "to provide an affidavit alleging specific facts or witnesses supporting his proffered defense."

"A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of a sentence is suspended." Code § 19.2-296. However, "to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea." *Id.* The Supreme Court has explained that "'motions to withdraw a guilty plea are governed by two separate standards,' depending on whether the motion comes before or after the defendant's sentencing." *Holland*, __ Va. at __ (quoting *Brown v. Commonwealth*, 297 Va. 295, 299 (2019)). For a motion to withdraw a guilty plea made *after* sentencing, a defendant "must establish a 'manifest injustice.'" *Id.* at __. "A manifest injustice 'amounts to an obvious miscarriage of justice' or '[a] direct, obvious, and observable error in a trial court.'" *Brown*, 297 Va. at 300 (alteration in original) (quoting *Velasquez v. Commonwealth*, 292 Va. 603, 616 (2016)). "Manifest injustice is a 'more severe standard' and it applies post-sentencing 'to avoid motions for withdrawal based on

disappointment in the terms of the sentence.'" *Id.* (quoting *Lilly v. Commonwealth*, 218 Va. 960, 965 (1978)).

On the other hand, and relevant to this appeal, a defendant's motion to withdraw his guilty plea made *before* his sentencing "should be granted in one of two situations: either when the defendant's guilty plea was 'made involuntarily,' or it was 'entered inadvisedly, if any reasonable ground is offered for going to the jury.'" *Holland*, __ Va. at __ (quoting *Brown*, 297 Va. at 299). For a guilty plea "entered inadvisedly, if any reasonable ground is offered for going to the jury" (as Hardy alleges in this case), a defendant bears the burden of establishing that:

> (1) the plea of guilty was submitted in good faith under an honest mistake of material fact or facts . . .; (2) the evidence supporting the motion shows that there is a reasonable defense to be presented to the charge; (3) granting the motion will not unduly prejudice the Commonwealth; and (4) the motion to withdraw the plea was not filed merely to cause undue delay in the administration of justice or [otherwise represents] bad faith or misconduct by or on behalf of the defendant.

*Id.* at __ (ellipsis and alteration in original) (footnote omitted) (quoting *DeLuca v. Commonwealth*, 73 Va. App. 567, 579 (2021), *aff'd per curiam*, 302 Va. 171 (2023)). "The first requirement protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court. The second requirement defeats motions to withdraw which would result in an essentially futile trial." *Brown*, 297 Va. at 299 (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)). In addition, "[t]he defendant's assertions must be 'sustained by proofs.'" *Holland*, __ Va. at __ (quoting *Justus v. Commonwealth*, 274 Va. 143, 153 (2007)).

### C. Reasonable Defense

It is well settled that a circuit court's "discretion to grant the motion to withdraw a guilty plea 'will rarely, if ever, be exercised in aid of an attempt to rely upon a merely dilatory or formal defense.'" *Brown*, 297 Va. at 301 (quoting *Justus*, 274 Va. at 153). As the Supreme

- 13 -

Court has often stated, "[T]he asserted defense must be 'substantive' and a 'reasonable defense.'" *Id.* (quoting *Bottoms v. Commonwealth*, 281 Va. 23, 33-34 (2011)). "A reasonable defense sufficient to withdraw a guilty plea is 'one based upon a proposition of law . . . or one supported by credible testimony, supported by affidavit.'" *Spencer v. Commonwealth*, 68 Va. App. 183, 188 (2017) (alteration in original) (quoting *Williams v. Commonwealth*, 59 Va. App. 238, 249 (2011)). Furthermore, a reasonable defense "must include a proffer of evidence showing a reasonable basis for contesting guilt." *Brown*, 297 Va. at 299 (quoting *Cobbins*, 53 Va. App. at 34). "If the trial court finds as a matter of law that the defendant has no reasonable defense, it may then deny the motion." *Hernandez v. Commonwealth*, 67 Va. App. 67, 79 (2016) (citing *Edmonds v. Commonwealth*, 292 Va. 301, 307 (2016)). "Although '[t]he issue is not whether a court thinks a jury or other factfinder would necessarily accept the defense,' a defendant still has the initial burden of presenting evidence in support of his contention." *Spencer*, 68 Va. App. at 189 (alteration in original) (quoting *Hubbard v. Commonwealth*, 60 Va. App. 200, 210 (2012)).

To the extent that the circuit court judge here used the phrase "substantial [d]efense" instead of "reasonable defense" at the hearings on Hardy's motion to withdraw his guilty pleas, we find that it does not demonstrate that the circuit court improperly held Hardy to a higher burden. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977). Given this well-established presumption, the Supreme Court has "cautioned against taking a court's ruling out of context by focusing on one isolated phrase." *Funkhouser v. Ford Motor Co.*, 285 Va. 272, 283 n.4 (2013); *see also Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 217 (2023) ("We do not, however, view a trial judge's statements from the bench in isolation."). Indeed, an appellate court will not "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them

as a predicate for holding the law has been misapplied." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (quoting *Yarborough*, 217 Va. at 978). A "trial court's remark is not, in and of itself, the full context simply because it represents the only point at which the court expressly addressed the issue in dispute." *Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007) (quoting *Parker v. Commonwealth*, 41 Va. App. 643, 656-57 (2003)).

Furthermore, notwithstanding the circuit court judge's requests for "affidavits or testimony" from Hardy's trial counsel, the circuit court ultimately allowed Hardy's trial counsel to proceed by proffer, and the circuit court then expressly accepted that proffer. Even if the circuit court did apply the wrong standard, however, such error would be harmless because, for the reasons described *infra*, Hardy failed to demonstrate a reasonable defense.

In this case, Hardy pleaded guilty to violating Code § 18.2-371.1(B), which provides, "Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony." Code § 18.2-371.1(B)(1). In seeking to withdraw his guilty pleas, Hardy relied on this Court's decision in *Coomer*, in which we held that driving while under the influence, standing alone, does not establish criminal negligence to support a conviction for felony child abuse or neglect. *Coomer*, 67 Va. App. at 550-51.

However, as the circuit court recognized, the Commonwealth's evidentiary proffer here showed far more than mere intoxication to support the child abuse or neglect charge. Indeed, the attorney for the Commonwealth proffered that Hardy "nearly r[an] Sergeant Harris off the road," that he was "completely oblivious" to his actions, and that he "then goes from the right to the left lane, smashes into a curb, which is what causes her to pull him over." The attorney for the Commonwealth also proffered that in the driver's side door of Hardy's vehicle, the police found

"syringes, a plastic spoon covered in a white powdery substance, a pill bottle containing plastic wrappings, paper and a cut straw"—a vehicle in which Hardy's three-year-old daughter was found "in the front passenger seat secured by a front facing car seat" and within close proximity to those syringes and that white powdery substance. In addition, subsequent lab testing determined that Hardy's "blood at the time of driving contained etizolam, fentanyl and morphine," and Hardy even "admitted himself that he was under the influence of" a controlled substance at the time he was pulled over by Sergeant Harris. Hardy also affirmatively answered, "Yes," to Officer Surdam's question, "Are you aware of the danger you put your daughter in?"

The evidence in the record before this Court on appeal contrasts sharply with the situation in *Coomer*, where we found that "the record lack[ed] any indication of excessive speed," any indication of "following too closely," or any indication of other improper driving behavior. *Coomer*, 67 Va. App. at 550-51. Virginia appellate courts have consistently found the evidence sufficient to prove criminal negligence when intoxication is combined with erratic driving behavior. *See, e.g.*, *Rich v. Commonwealth*, 292 Va. 791, 802-03 (2016); *Stevens v. Commonwealth*, 272 Va. 481, 488 (2006); *Wood v. Commonwealth*, 57 Va. App. 286, 301 (2010). Although sufficient evidence does not mean that a jury would necessarily convict a defendant,

> the bare possibility that a juror or jury would find in favor of appellant at trial, by itself, does not require a trial court to set aside a guilty plea. Disregarding the solemn guilty plea on so casual a standard "would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess."

*Booker v. Commonwealth*, 61 Va. App. 323, 337 (2012) (quoting United States v. Hyde, 520 U.S. 670, 677 (1997)). In short, given the substantial differences between the Commonwealth's proffered evidence in this case and the situation in *Coomer*, any defense Hardy may have had based on *Coomer* would be "merely formal" and would not rise to the level of a "substantive" and "reasonable defense." *Id.* at 333-34 (quoting *Bottoms*, 281 Va. at 33).

Furthermore, Hardy's trial counsel did not proffer any evidence to the circuit court to undermine the Commonwealth's case. Instead, Hardy's trial counsel made only a vague reference to "the evidence that was provided to me in police reports and video" and suggested that the Commonwealth's evidence "will certainly be drawn into question." However, "a bare challenge to the credibility of a victim or witness" is not a reasonable defense that would "permit the withdrawal of a plea of guilty." *Thomason v. Commonwealth*, 69 Va. App. 89, 96 (2018) (quoting *Williams*, 59 Va. App. at 249); *see also Coleman v. Commonwealth*, 51 Va. App. 284, 292-93 (2008) (holding that the defendant's claim of misidentification was "merely dilatory or formal" because "five witnesses testified that they immediately recognized" him, and he did not proffer any specific evidence supporting misidentification). Rather, a defendant seeking to withdraw his guilty plea must proffer a "defense beyond simply making the prosecution prove its case." *Booker*, 61 Va. App. at 335. Given that Hardy simply failed to proffer a reasonable defense, we cannot say that the circuit court abused its discretion in denying Hardy's motion to withdraw his guilty pleas.[9]

## III. CONCLUSION

In *Commonwealth v. Holland*, the Supreme Court recently reiterated yet again the well-established principle that "[a]ppellate courts are a court of review, not first view." *Holland*, __ Va. at __. Indeed, "[w]hen evaluating factual or credibility determinations, we do not put ourselves in the shoes of a trial judge and ask, 'What would we have done?' Rather, we are confined to a cold record, with its attendant absence of the evidentiary nuances and subtleties observed only by the trial court." *Id.* at __. In short, to adopt Hardy's argument here, we would

---

[9] "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). Here, the best and narrowest ground is that Hardy failed to present a reasonable defense. Thus, we do not reach the other factors for withdrawing a guilty plea. *See DeLuca*, 73 Va. App. at 580 & n.4 (affirming the circuit court's judgment because the defendant filed his motion to withdraw in bad faith and declining to reach the other factors).

be "put[ting] aside the appropriate standard of review" and "wrongly swapp[ing] the trial court's discretion for [our] own," which the Supreme Court has been clear that an appellate court cannot do. *Id.* at __. Therefore, for all of these reasons, we hold that the circuit court did not abuse its discretion in denying Hardy's motion to withdraw his guilty pleas. Consequently, we do not disturb the circuit court's judgment.

*Affirmed.*